UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTAWAN SMITH, ) | |
| ) | Case No. 23-cv-05121 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| THE CITY OF CHICAGO, and CHICAGO ) | |
| DETECTIVES RICHARD HANRAHAN, TODD ) | |
| GILLERAIN, and UNKNOWN CHICAGO ) | |
| POLICE PERSONNEL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANUM OPINION AND ORDER**

Plaintiff Antawan Smith was arrested and tried for murder and other crimes arising out of a shooting in Chicago. After two years of pretrial custody, Smith was acquitted at trial when the shooting victim recanted her identification and called him innocent. Smith now sues the City of Chicago (the "City"), Chicago Detectives Richard Hanrahan and Todd Gillerain, and Unknown Chicago Police Personnel (with Hanrahan and Gillerain, the "Detectives"; collectively with the City, "Defendants") for the following claims: Illegal Seizure against the Detectives under 42 U.S.C. § 1983 (Count I); Malicious Prosecution against the Detectives under 42 U.S.C. § 1983 (Count II); Malicious Prosecution against the Detectives under Illinois state law (Count III); and Indemnification against the City under 745 ILCS 10/9-102 (Count IV). Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion [23].

**BACKGROUND**

The Court accepts the following facts as true for the purposes of deciding Defendants' motion. On May 14, 2019, Jaylin Ellzey and Emma Clark were shot around 206 W. 113th Street in

1

Chicago, Illinois. Clark was injured and, tragically, Ellzey was killed. Some combination of Chicago Police investigated the case, including by interviewing Clark. Clark knew Smith at the time of the initial interview, yet she did not contemporaneously identify him as the shooter. Instead, she told the Detectives that "the shooter was a male black in his twenties, with a baby face (no tattoos) and no facial hair." That description does not match Smith, as he had visible tattoos on this face.

A few days after the shooting, police interviewed Devontae Bell. Bell did not identify Smith during his initial interview. Bell was later arrested for selling heroin. Smith's allegations imply that Bell later entered into an agreement to provide false information to the Detectives in order to avoid going to prison on his heroin charge, including by identifying Smith as the May 14 shooter.

After receiving this information from Bell, the Detectives returned to Clark, who was still in the hospital. According to Smith, the Detectives misled and pressured Clark into identifying Smith as the shooter to support probable cause for his arrest. A few days after this hospital-room interview, the Detectives "caused Smith to be arrested and charged with the first-degree murder of Jaylin Ellzey and charged with aggravated battery with a firearm to Ms. Clark."

At Smith's eventual trial,[1] no witness identified him as the shooter; in fact, Clark allegedly testified (referring to Smith) that she "did not want to identify an innocent man as the shooter." A jury acquitted Smith on September 29, 2022, and he was released after two years of pretrial custody. According to Smith, the Detectives failed throughout this time to disclose that Clark previously could not identify the shooter and "that they had fabricated reports."

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations

---

[1] Smith's charges in state court were continued over a lengthy time period.

2

as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## DISCUSSION

### I. Duplicative Fourth Amendment Claims

Defendants argue that Count I should be dismissed as (1) duplicative of the remaining federal and state malicious prosecution counts (Counts II and III); (2) inadequately pled; or (3) time barred. All three of these arguments appear to arise out of confusion about the various labels Smith used to describe his Fourth Amendment-related claims under 42 U.S.C. § 1983. Count I of Smith's complaint alleges "Illegal Seizure" against the Detectives under § 1983 and describes the unreasonable seizure as Smith being "unlawfully detained prior to his criminal trial." Count II alleges "Malicious Prosecution" under § 1983 against the same subset of defendants (the Detectives) based on the same underlying facts (paragraphs 1-35) and the same unreasonable seizure—that is, that "[Smith] was deprived of liberty until after trial." Defendants argue that Count I, as alleged, is duplicative of Smith's malicious prosecution claims under Supreme Court precedent. The Court agrees that at least Counts I and II are more properly described as a single Fourth Amendment "malicious prosecution" claim.

Smith does not respond to the substance of Defendants' argument that his claims are duplicative, instead arguing only that "the degree to which a claim is duplicative has no place in a motion to dismiss … [Smith] has the right to choose which viable claims to proceed to trial with."

3

But that misses the point of Defendants' argument. Defendants cite *Thompson v. Clark*, 596 U.S. 36, 43, 142 S. Ct. 1332, 1337–38, 212 L. Ed. 2d 382 (2022), for the proposition that a Fourth Amendment unreasonable seizure claim is analogous to a common law malicious prosecution tort. In *Thompson*, the Supreme Court held that "the gravamen of the Fourth Amendment claim for malicious prosecution … is the wrongful initiation of charges without probable cause … [which] is likewise the gravamen of the tort of malicious prosecution." *Id.* As the *Thompson* Court explained, such Fourth Amendment-based claims are "sometimes referred to as a claim for unreasonable seizure pursuant to legal process." *Id.* at 42. In this context, the terms "illegal seizure," "unreasonable seizure," and "malicious prosecution" all refer to the same violation.

These labels are likewise interchangeable in Smith's pleadings. He alleges that the "Illegal Seizure" at issue was his detention pending trial and that the "Malicious Prosecution" deprived him of his liberty pending trial. The claims seek the same relief based on the same law and facts against the same parties. Although plaintiffs are allowed to plead alternative avenues for recovery, "[o]ne count [of a complaint] may be dismissed as duplicative of another where 'the parties, claims, facts and requested relief are substantially the same.'" *Lansing v. Carroll*, No. 11 C 4153, 2012 WL 4759241, at *1 (N.D. Ill. Oct. 5, 2012) (Lefkow, J.) (citing *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at *2 (N.D. Ill. Jan.18, 2011) (Valdez, J.) (citing *Norfleet v. Stroger*, 297 Fed. Appx. 538, 540 (7th Cir. 2008))). The Rules also give the Court power to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court therefore dismisses Count I as redundant; it is identical to Smith's federal claim in Count II.

Defendants argue in the alternative, were the Court to read Count I as some unlawful seizure other than malicious prosecution (which it does not), that Count I is inadequately pled or time

4

barred. But because the Court dismisses Count I as duplicative of Count II, it need not address Defendants' alternative arguments.

## II.     Probable Cause

Both of Smith's remaining malicious prosecution claims require that the Detectives did not have probable cause to arrest him. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (probable cause is an absolute defense to malicious prosecution under § 1983); *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (lack of probable cause is an element of a malicious prosecution under Illinois law). And as Smith concedes, the City can only be liable for indemnification if the Detectives are liable for one or more of Smith's other claims. Defendants argue that Smith alleges facts supporting probable cause and therefore pleads himself out of court.

Probable cause "exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (citation omitted). Establishing probable cause is "not a high bar," and the Court must view the facts from the perspective of "an objectively reasonable police officer." *D.C. v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (citations omitted).

Defendants argue that the Detectives had probable cause to suspect Smith of the shooting because two witnesses, Clark and Bell, identified Smith. Defendants are correct that "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). But Defendants downplay Smith's allegations. At this stage, Smith's allegations must be taken as true, with all reasonable inferences made in his favor. *Trujillo*, 926 F.3d at 397.

Smith does not dispute that generally an identification can support probable cause. Instead, Smith alleges that the identifications in his case were false, and that the Detectives intentionally

5

coerced them and falsified reports. As Smith points out, such facts, if proven, could show that the Detectives did not have probable cause: "Where police officers manipulate the evidence, present a one-sided version of events, or turn a blind-eye to the facts that would clarify the basis of a subjective belief, the record will not necessarily 'support a conclusion that [the arresting officers] decided, in an objectively reasonable fashion, that they had probable cause' to make an arrest." *Craig v. City of Chicago*, No. 08 C 2275, 2011 WL 1196803, at *7 (N.D. Ill. Mar. 25, 2011) (Hibbler, J.) (citing *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014–15 (7th Cir. 2006)). Allegations that officers fabricated evidence can, at this stage, support a conclusion that the officers lacked probable cause. *See Hegwood v. Meijer, Inc.*, No. 17 C 2887, 2017 WL 5517255, at *2 (N.D. Ill. Nov. 17, 2017) (Feinerman, J.) (collecting cases); *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) (holding that, although an officer may end his investigation once probable cause is established, the officer "may not close his eyes to facts that would clarify the situation").

Defendants attempt to distinguish *Craig* by arguing that "[Smith] does not allege that any photo array given to Bell was unduly suggestive or Bell's actual identification of [Smith] was unreliable." That comparison, however, unduly narrows the key reasoning in *Craig* and understates Smith's allegations. First, an "unduly suggestive" photo array is only one type of manipulation of evidence that could defeat probable cause. Second, Smith alleges more than that Bell's testimony was unreliable, he specifically states that "Bell agreed to provide false information" to the police to avoid prison, even though Bell did not identify Smith in an interview with the police shortly after the shooting.

Smith's allegations relating to Clark are similar. Smith says that Clark knew who he was at the time of the shooting and knew he had visible face tattoos, yet she did not identify him. Instead, Clark told the Detectives that the shooter had a baby face with no tattoos. Smith alleges that it was not until the Detectives pressured Clark to identify him as the shooter, including by lying about the

6

number of people who had identified Smith, that Clark identified Smith—an identification she later recanted. Moreover, the Detectives allegedly withheld her initial failure to identify Smith. Such contradictory evidence known to the police, and alleged manipulation of evidence, militates against finding probable cause as a matter of law. *See Sornberger*, 434 F.3d at 1014.

For these reasons, Smith has adequately alleged that the Detectives lacked probable cause for his arrest and pretrial detention. The Court therefore rejects that aspect of Defendants' motion.

### III. Qualified Immunity

Defendants argue that, even if the Detectives lacked probable cause, they are protected by qualified immunity. *See Sornberger*, 434 F.3d at 1014 ("even if probable cause is lacking with respect to an arrest, the arresting officer is entitled to immunity so long as his belief that he had probable cause was objectively reasonable"). But qualified immunity is not absolute. "It contemplates instances in which a public official's actions are not protected because the official knew or should have known he was violating an individual's constitutional rights." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 506–07, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ("[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law, and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment.")).

The Detectives are not entitled to qualified immunity at this point of the proceedings. If Smith's allegations are proven, the law was clearly established at the time of the alleged violations that officers cannot perform arrests based on fabricated evidence. *See Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) ("According to the plaintiffs, the police officers fabricated a police report in order to justify their arrests. A reasonable officer would have understood that what he was doing violated their right to be free from unreasonable seizure."); *Garcia v. City of Chicago*, 2012 WL 601844, at *7 (N.D. Ill. Feb. 23, 2012) (Feinerman, J.) (holding that "[i]t was clearly established in

7

December 2007 that the Fourth Amendment prohibits a law enforcement officer from knowingly leveling false charges in a case report or criminal complaint").

Smith adequately alleges that the Detectives did not act with qualified immunity. The Court thus rejects Defendants' arguments on those grounds. Counts II and III may proceed.

### IV. Indemnification

Defendants' only argument against Count IV of the complaint is that it is necessarily tied to the underlying claims for liability. Since the Court allows Counts II and III to proceed, the Court rejects Defendants' argument on indemnification at this time.

### CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss [23]. The Court dismisses Count I but denies Defendants' motion as to all other claims. Counts II through IV may proceed.

**IT IS SO ORDERED.**

Date: 8/12/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge